IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

EUGENE S. HALL,

    Plaintiff,

v.

6:14-CV-1410-PK

OPINION AND ORDER

CAROLYN W. COLVIN,

    Defendant.

---

PAPAK, Magistrate Judge:

    Plaintiff Eugene S. Hall filed this action against defendant Carolyn W. Colvin, Acting Commissioner of Social Security, on September 2, 2014, seeking judicial review of the Commissioner's decision finding him not disabled for purposes of entitlement to disability insurance benefits ("DIB") under Title II of the Social Security Act. On September 29, 2015, I recommended that the Commissioner's decision should be reversed and that this matter should be remanded for the calculation and payment of benefits. Judge Mosman adopted that recommendation as his own opinion, without modification. Hall moved unopposed for an award of attorney fees pursuant to the Equal Access to Justice Act (the "EAJA") on December 8, 2015, and I granted the motion that same day, authorizing award of fees to Hall pursuant to the EAJA in the amount of $4,391.97.

    Now before the court is Hall's unopposed motion (#31), filed pursuant to 42 U.S.C. §

Page 1 - OPINION AND ORDER

406(b), for approval of payment to his counsel out of his retroactive benefits award of $94,024.00 the amount of $18,000[1] less an administrative deduction to be assessed by the Commissioner pursuant to 42 U.S.C. § 406(d). I have considered Hall's motion and all of the evidence in the record. For the reasons set forth below, Hall's motion is granted, and payment to Hall's counsel of attorney fees in the amount of $17,714.21 (less an administrative deduction to be assessed by the Commissioner pursuant to 42 U.S.C. § 406(d)) is approved.

## ANALYSIS

Pursuant to 42 U.S.C. § 406(b), Hall's counsel seeks the court's approval of payment to her of attorney fees out of Hall's retroactive benefits award in the amount of $18,000.00. This amount reflects a $1,114.03 deduction from the 25% contingency fee to which Hall's counsel is entitled pursuant to her fee agreement with Hall (which fee counsel asserts she has not yet received), but does not reflect any deduction from the contingency amount pursuant to 42 U.S.C. § 406(d). Section 406(b) provides, in relevant part, as follows:

> Whenever a court renders a judgment favorable to a claimant under this subchapter who was represented before the court by an attorney, the court may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment....

42 U.S.C. § 406(b)(1)(A). By contrast with fees awarded pursuant to the EAJA, a fee-shifting statute, Section 406(b) fees are paid out of the retroactive benefits awarded to the successful Social Security claimant. *See id.* Counsel representing Social Security claimants may not seek compensation from their clients for trial litigation other than through a Section 406(b) fee. *See*

---

[1] This amount represents 25% of the retroactive benefits award ($23,506.00) less the amount of the EAJA fees awarded ($4,391.97) and less an additional voluntary reduction (in the amount of $1,114.03) self-imposed by Hall's counsel.

Page 2 - OPINION AND ORDER

*id.* In the event that both an EAJA fee is awarded and a Section 406(b) fee payment is approved, the claimant's counsel must refund to the claimant the amount of the smaller of the two payments. *See Gisbrecht v. Barnhart*, 535 U.S. 789, 796 (2002). Any Section 406(b) fee must be approved by the court following analysis of its reasonableness before it may be paid. *See* 42 U.S.C. § 406(b)(1)(A).

In *Gisbrecht*, the Supreme Court established that the reasonableness of a Section 406(b) contingency fee is not to be determined primarily by reference to the lodestar method which governs fee-shifting disputes. *See Gisbrecht*, 535 U.S. at 801-802. Instead, to the extent contingency fee agreements do not provide for fees exceeding 25% of claimants' retroactive benefits, their terms are fully enforceable subject only to the court's review "to assure that they yield reasonable results in particular cases." *Id.* at 807. It is the claimant's counsel's burden to establish the reasonableness of the calculated fee. *See id.*

In assessing the reasonableness of a Section 406(b) fee, courts look first to the contingency fee agreement itself, and then may reduce the resulting award "based on the character of the representation and the results the representative achieved." *Id.* at 808. The claimant's counsel bears the burden to establish the reasonableness of a Section 496(b) fee. *See id.* at 807.

The *Gisbrecht* court provided, as examples of circumstances that could justify a downward reduction, situations in which the attorney was responsible for delay or in which "the benefits are large in comparison to the amount of time counsel spent on the case." *Id.* The court specified that "the court may require the claimant's attorney to submit, not as a basis for satellite litigation, but as an aid to the court's assessment of the reasonableness of the fee yielded by the

Page 3 - OPINION AND ORDER

fee agreement, a record of the hours spent representing the claimant and a statement of the lawyer's normal hourly billing charge for noncontingent-fee cases." *Id.*, *citing Rodriquez v. Bowen*, 865 F.2d 739, 741 (6th Cir. 1989) (*en banc*).

The Ninth Circuit's *en banc* decision in *Crawford v. Astrue*, 586 F.3d 1142 (9th Cir. 2009), applied the *Gisbrecht* reasonableness analysis. The *Crawford* court affirmed *Gisbrecht*'s holding that it is error to determine the reasonableness of a Section 406(b) fee by the metric of the lodestar method. *See Crawford*, 586 F.3d at 1150.

Here, Hall entered into a contingency fee agreement with his counsel providing for payment of 25% of his retroactive benefits to his attorney in the event of a favorable outcome following federal litigation. It therefore now falls to the court to assess whether $18,000, or 23.82% of the retroactive benefits award less the EAJA fees previously awarded, constitutes reasonable compensation for Hall's counsel under the various factors discussed in *Gisbrecht* and *Crawford*.

### A. Character of the Representation

#### 1. Quality of Attorney Performance

As *Gisbrecht* and *Crawford* both make clear, substandard performance by a legal representative warrants a reduction in a Section 406(b) fee award. *See Gisbrecht*, 535 U.S. at 808; *Crawford*, 586 F.3d at 1151. Here, there is no indication in the record that Hall's counsel's representation of her client was in any way substandard. No reduction in the Section 406(b) fee is therefore warranted due to the character of counsel's legal representation.

#### 2. Dilatoriness

A Section 406(b) award may properly be reduced if any delay in proceedings is properly

Page 4 - OPINION AND ORDER

attributable to the claimant's counsel. *See Gisbrecht*, 535 U.S. at 808; *Crawford*, 586 F.3d at 1151. Here, Hall's counsel sought and received one 21-day extension of the deadline for filing the opening brief due to a "backlog in [her] caseload" resulting from a combination of a large number of active cases and counsel's recovery from ankle surgery and one 4-day extension of the deadline for filing a reply memorandum due to a further "backlog in [her] caseload" resulting from the large number of active cases she was litigating at the time. Although there was no impropriety whatsoever in seeking extension of court deadlines in order to accommodate challenges in counsel's workload management or counsel's recovery from surgery, such extensions did occasion delay in the final outcome of review proceedings for which the attorney was squarely responsible, warranting a commensurate reduction under *Gisbrecht*. Moreover, although there was similarly nothing unreasonable about either of the requests for extension, I find under the court's inherent authority and obligation to evaluate the reasonableness of fee awards, *see Gisbrecht*, 535 U.S. at 808, *see also Crawford*, 586 F.3d at 1149, that it would nevertheless be unreasonable for Hall's attorney to benefit financially at Hall's expense from any delay, of no matter what duration, caused by the attorney's difficulties in managing the workload she elected to bear and/or by matters personal to the attorney.[2]

But for the attorney-attributable delay, Hall would have had 25 fewer days of past-due benefits, and would have received benefits for those 25 days without a deduction for attorney fees. Those 25 days of benefits would have been compensated at a monthly rate of $1,714, and thus would have been compensated in the total amount of $1,199.80, 23.82 percent of which is

---

[2] Where extension is sought due to the particular complexity of a case or for the purpose of facilitating settlement negotiations, attorney-requested extensions of time do not warrant reduction under *Gisbrecht*. However, those factors are not at issue here.

Page 5 - OPINION AND ORDER

$285.79. The requested Section 406(b) fee is therefore reduced by $285.79 on the basis of attorney delay.

B.      Proportionality of Benefits Awarded to Attorney Time Spent

The *Gisbrecht* and *Crawford* courts both held that a Section 406(b) award could be reduced if the benefits awarded to the Social Security claimant were out of proportion to the time spent by the claimant's attorney. *See Gisbrecht*, 535 U.S. at 808; *Crawford*, 586 F.3d at 1151. Although neither court's opinion provides significant guidance as to how to measure such disproportionality, *Gisbrecht* established, *see* 535 U.S. at 808, and *Crawford* affirmed, *see* 586 F.3d at 1151, that records of attorney time expended and a statement of the attorney's normal hourly fee in non-contingent matters could be considered in this connection, but only as an "aid" in assessing the reasonableness of the award provided in the contingency fee agreement.

As noted above, the *Gisbrecht* and *Crawford* courts made clear that the lodestar method is an inappropriate metric for determining the proportionality of Section 406(b) compensation. *See Gisbrecht*, 535 U.S. at 801-802; *Crawford*, 586 F.3d at 1150. Indeed, considered in isolation, the product of the lodestar calculation can at best be of extremely limited utility in assessing the reasonableness of a contingency fee. The lodestar method of calculating fees is designed for use where it is intended that an attorney be compensated strictly for time expended rather than on the basis of results achieved, milestones reached, or any of the myriad other bases on which clients may permissibly compensate their legal representatives, and where the probability of nonpayment is both low and unrelated to the attorney's ultimate success or failure. By contrast, the method authorized under Section 406(b) is one designed to compensate attorneys commensurately with results achieved, and to take into account the risk of failure, in which case

Page 6 - OPINION AND ORDER

no compensation is available. As a matter of logic, the fact (standing alone) that a fee calculated according to the lodestar method differs from a fee calculated according to a contingency fee agreement is uninformative as to whether the contingency fee might be disproportionate.

Approaching the question from first principles, it is clear that the disproportionality analysis can have nothing to do with the absolute amount of the Section 406(b) fee requested, since that fee is always a maximum of 25% of the retroactive benefits award, and must instead necessarily address primarily the effective requested hourly rate that may be back-derived by dividing the putative contingency award by the number of hours spent in pursuing it. Although that effective requested hourly rate cannot usefully be directly compared to a reasonable hourly fee to determine its proportionality, it is logically defensible to posit that an effective requested hourly rate is not disproportionately high if it is less than or equal to the product of a reasonable hourly rate for non-contingent matters and the reciprocal of the pre-litigation probability that litigation would lead to a favorable result, based on the particular facts presented in a given case.[3] That is, an effective requested hourly rate cannot be disproportionately high if it does not overcompensate an attorney for the risk that the attorney assumed at the time the representation was undertaken that the attorney would ultimately receive no compensation for his or her services. An attorney is not overcompensated for such risk if the pre-litigation expected value of the representation – the probability of a favorable result times the compensation that would be received in the event of a favorable result – does not exceed the product of the appropriate hourly

---

[3] Thus, if $100 were a reasonable hourly rate of compensation for non-contingent matters, an effective requested hourly rate would not be disproportionate in light of the risk a particular contingency matter presented if, *e.g.*, the probability of a favorable outcome was 25% (or a one in four chance) and the effective requested hourly rate did not exceed $400 (or four times the reasonable hourly rate).

Page 7 - OPINION AND ORDER

rate and the expected number of hours required.

In addition to giving cognizable effect to the *Gisbrecht* court's suggestion that an attorney's normal hourly rate could bear materially on the disproportionality analysis, *see Gisbrecht*, 535 U.S. at 808, and to the *Crawford* court's suggestion that case-specific risk could be a material factor in assessing the reasonableness of a Section 406(b) fee, *see Crawford*, 586 F.3d at 1152-1153, measuring the relationship between a reasonable hourly fee for non-contingent matters and the effective requested hourly rate by reference to the case-specific risk of an unfavorable result has the benefit of suggesting a potentially useful metric for assessing proportionality: a contingency fee award is disproportionately high where it disproportionately overcompensates for the pre-litigation risk of an unfavorable result. I therefore assess the proportionality of the fee requested in this action to the time expended in litigation by reference to this risk-assessment metric.

Here, Hall's counsel offers evidence that she expended a total of 23.15 hours in litigating Hall's petition for judicial review; this total includes time spent preparing the motion for EAJA fees but not time spent preparing the motion for Section 406(b) fees now before the court. Compensation for 23.15 hours work in the amount of $22,391.97 (the total amount of compensation Hall's counsel seeks under both the EAJA and Section 406(b)) in a non-contingency context would reflect an hourly rate of $967.26. Hall's counsel offers no evidence of her normal hourly rate, but I may take judicial notice that the Oregon State Bar Economic Surveys provide information as to rates prevalent in various Oregon legal communities in the years in which survey data are collected, that the legal services at issue here were performed by Kathryn Tassinari, a Eugene-based practitioner, in 2014, and 2015, that Tassinari has been a

Page 8 - OPINION AND ORDER

member of the Oregon bar since 1980, that the most recent such survey issued in 2012 and provides information as to rates actually charged by Oregon attorneys in 2011, and that, according to the 2012 Economic Survey, the median hourly rate charged by Oregon attorneys with 21-30 years' experience in private practice in 2011 was $250.00. An appropriate method for adjusting the 2011 rates reported in the 2012 Economic Survey for inflation to produce an estimate of the corresponding rates prevalent in the material legal community in 2014 and 2015, when Hall's petition for judicial review was litigated, is to multiply the 2011 rates by the federal Bureau of Labor Statistics' reported consumer price index for urban consumers ("CPI-U") for the years in which the fees were incurred, and then to divide the resulting quotients by the reported CPI-U for 2011. I take judicial notice that the Bureau of Labor Statistics has published a CPI-U for the Western states of 227.485 for 2011, of 240.215 for 2014, and of 243.015 for 2015. Adjusting for inflation thus yields constructive reasonable average rates of $263.99 for 2014 and $267.07 for 2015.

Because the back-derived rate for the contingency fee is $967.26, or approximately 3.7 times the 2014 constructive reasonable hourly rate for non-contingency work and approximately 3.6 times the 2014 constructive reasonable hourly rate for non-contingency work, the requested contingency fee can only can only be disproportionate if, at the time Tassinari undertook to represent Hall, the risk of an unfavorable outcome was clearly lower than approximately 72.5% (or, to put the same point in different terms, the requested fee is disproportionate to the risk only if the pre-litigation probability of success on judicial review was clearly higher than 27.5%). I cannot find on the basis of the record here that the risk to Tassinari of an unfavorable outcome on judicial review of Hall's application was clearly lower than 72.5% at the time she undertook to

Page 9 - OPINION AND ORDER

represent Hall. I therefore conclude that reduction is not warranted in connection with the proportionality factor, taking into account the case-specific risks and the appropriate normal hourly rate for non-contingent matters.

### C.     Appropriate Fee

For the foregoing reasons, I find that the contingency fee agreement in place between Hall and his counsel is within the statutory limits provided in 29 U.S.C. § 406(b), and that the fee provided therein (less the reduction discussed above for attorney-caused delay) is reasonable. The motion for approval of Section 406(b) fees is therefore granted, and payment to Hall's counsel of $17,714.21 (less an administrative deduction to be assessed by the Commissioner pursuant to 42 U.S.C. § 406(d)) from Hall's retroactive fee award is approved.

### CONCLUSION

For the reasons set forth above, the motion (#31) for Section 406(b) attorney fees is granted, and payment to Hall's counsel of $17,714.21 (less an administrative deduction to be assessed by the Commissioner pursuant to 42 U.S.C. § 406(d)) from Hall's retroactive DIB award is approved.

Dated this 15th day of June, 2016.

Honorable Paul Papak
United States Magistrate Judge